**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 21-167 (APM) – 1** |
| | : | |
| **v.** | : | |
| | : | |
| **SINCERE HOWARD** | : | |
| | : | |
| **Defendant.** | : | |

---

**GOVERNMENT'S RESPONSE TO COURT'S AUGUST 4, 2022, ORAL ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to the Court's August 4, 2022, order, as modified by the Court's August 15, 2022, Minute Order, requiring the parties to submit position papers on two discrete questions.

By way of background, on June 8, 2022, the Court made on-the-record findings that, by a preponderance of the evidence, Defendant Sincere Howard (hereinafter, "the defendant") was presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or assist properly in his defense. The Court's findings were based on a defense expert's report issued the month prior which found defendant was not presently competent to stand trial, a conclusion to which the government's expert, a psychologist with the Bureau of Prisons ("BOP"), did not object. Pursuant to the Insanity Defense Reform Act ("IDRA"), 18 U.S.C. § 4241(d), upon making these findings, the Court ordered that the defendant be committed to the custody of the Attorney General and ordered the Attorney General to hospitalize the defendant at a suitable facility "for such a reasonable period of time, not to exceed four months, as is necessary to

determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *See* ECF No. 38.

Once the government received the Court's order, it transmitted it to the United States Marshals Service ("USMS"), the agency within the Department of Justice responsible for all matters related to the transport of federal inmates. In turn, USMS notified BOP, the agency responsible for housing federal inmates, including pretrial detainees whose incompetence to stand trial requires restoration treatment. The BOP approved the defendant's transfer to one of the three medical facilities it operates that can complete competency restoration – Federal Medical Center ("FMC") Devens –but, due to systematic backlogs throughout the system and a limited number of beds throughout the three facilities, the USMS learned that his tentative intake date is currently scheduled for November 2022. The government has since conveyed this information to the Court and counsel and kept the Court updated regarding the defendant's movement on the waiting list for transport to FMC Devens. *See, e.g.,* ECF 40.

Given the fact that it appears that the defendant will likely not be transported to FMC Devens until approximately 150 days after the Court initially issued its June 9, 2022, Order, the Court has posed two separate inquiries to counsel: "(1) whether the 120-day clock began to run from the date of the court's commitment order (or some later date) and (2) if the clock has not yet started, how long Defendant can remain in pre-hospitalization incarceration before his due process rights are implicated." *See* Aug. 15, 2022, Minute Order. The government responds as follows.

## I. THE FOUR-MONTH CLOCK BEGINS WITH HOSPITALIZATION.

The four-month time period[1] within which the Attorney General or his designees must

---

[1] The Joint Motion for Clarification incorrectly referred to a "120-day clock," but the statute refers to "four months." 18 U.S.C. § 4241(d)(1).

hospitalize a criminal defendant to determine whether he or she may be restored to competency does not begin until the defendant arrives at the "suitable place" and is actually hospitalized. The plain language of the statute permits no other interpretation. The text of §4241(d) first provides that "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility," before then going on to modify the scope of the Attorney General's ability to hospitalize the defendant by dictating that such hospitalization must be limited to "reasonable period of time, not to exceed four months." 18 U.S.C. § 4241(d)(1) (emphasis added). In other words, the time limit specified in sub-subsection (1) modifies the hospitalization of the incompetent criminal defendant called for in subsection (d) and has no other application. Notwithstanding Judge Friedrich's opinion in *United States v. Antwan Carter*, No. 19-cr-261 (DLF), every other court to have analyzed the issue has adopted this position. *See e.g., United States v. Villegas*, 589 Fed. Appx. 372, 373 (9th Cir. 2015); *United States v. Evans*, 690 F.3d 940, 941 (8th Cir. 2012); *United States v. Magassouba*, 544 F.3d 387, 409-10 (2d Cir. 2008); *United States v. Wills*, Case No. 2:18-cr-289, 2020 WL 53850, *3 (S.D. W. Va. Jan. 3, 2020); *United States v. Zapata-Herrera*, No. 14-CR-3639- GPC, 2015 WL 4878319, at *1 (S.D. Cal. Aug. 14, 2015); *United States v. Giorella*, Case No. 09-cr-41-PA, 2009 WL 3016631, at *2 (D. Colo. Nov. 17, 2009).

## II. THE DUE PROCESS CLAUSE DOES NOT SET A FIXED TIME FOR PRE-HOSPITALIZATION INCARCERATION.

In this context, the Due Process Clause does not impose a specific time threshold past which an incompetent defendant's pre-hospitalization confinement automatically violates his or her rights. Rather, the relevant inquiry into when a defendant's due process rights are implicated by pre-hospitalization confinement after a § 4241(d) order has been issued is one focused on reasonableness of the nature and duration of that confinement, as dictated by *Jackson v. Indiana.* 406 U.S. 715, 738 (1972). There, the Court held that "due process requires that the nature and

duration of commitment bear some *reasonable* relation to the purpose for which the individual is committed," and one charged with a criminal offense who would be committed solely on account of present incapacity to stand trial "cannot be held more than the *reasonable* period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* (emphasis added). *Jackson*'s focus on reasonableness, of both the nature and the duration of the commitment, precludes specifying an arbitrary time limit past which it can be definitively determined that an incompetent defendant's due process rights have been violated. Indeed, imposing such a limit is the antithesis of a reasonableness inquiry. *See, e.g., United States v. Smith,* 928 F.3d 1215, 1228 (11th Cir. 2019) ("We do know from the Supreme Court that there is no brightline rule for reasonableness, and that a reasonableness inquiry necessarily is fact-specific and examines the totality of the factual circumstances of each particular case.") (citing *Ohio v. Roberts*, 448 U.S.S. 56, 75-77 (1980); *United States v. Banks*, 540 U.S. 31, 36 (2003); *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Ker v. California*, 374 U.S. 23, 33 (1963)). Although, for purposes of the IDRA, Congress has determined that four months is the maximum "reasonable" period of time for hospitalization to determine whether there is a substantial probability that an incompetent defendant will regain competency in the foreseeable future, § 4241(d)(1), that statutory limit says nothing about what is reasonable under the Constitution. Notably, in *Jackson,* the Supreme Court declined to set any fixed rule for when pre-hospitalization incarceration triggers due-process concerns.

It is for this reason that the United States disagrees with the Ninth Circuit's recent decision in *United States v. Donnelly*, 41 F.4th 1102 (9th Cir. 2022), which held that, under *Jackson*, the Due Process Clause flatly prohibits, without any apparent exception, any pre-hospitalization confinement period longer than four months, regardless of the circumstances surrounding the

confinement. *Id.* Rather, given that "reasonableness" is a variable standard, the Court must undertake a fact-specific inquiry into the basis for the pre-hospitalization confinement and whether the delay between the Court's order and the ultimate hospitalization of the defendant is reasonable in light of the record before it. In this case, if the defendant's pre-hospitalization confinement approaches four months, which it likely will based on the information provided by USMS, the government will be prepared to fully supplement the record as to why the defendant's hospitalization has been delayed and what bearing such facts may have on the reasonableness of his continued confinement pending transfer to FMC Devens. To that end, the government believes that any due process reasonableness analysis – and the remedy in the event of a violation – is premature and thus not ripe for resolution.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 415793

By: /s/
Will Hart (D.C. Bar No. 1029325)
Assistant United States Attorney
601 D St., N.W., Room 5.721
Washington, DC 20530
William.hart@usdoj.gov
(202) 730-5711